1
2
3
4
5
6            IN THE UNITED STATES DISTRICT COURT

7              FOR THE DISTRICT OF ARIZONA

8   Dino Wayne Kyzar,                    )
                                         )
9              Petitioner,               )   CIV 06-2015 PHX SRB (MEA)
                                         )
10             v.                        )   REPORT AND RECOMMENDATION
                                         )   UPON REMAND
11  Dora B. Schriro, et al.,             )
                                         )
12             Respondents.              )
    _____)

13

14  TO THE HONORABLE SUSAN R. BOLTON:

15          On August 21, 2006, Petitioner filed a *pro se* petition

16  for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.   On

17  November 7, 2007, the Magistrate Judge filed a Report and

18  Recommendation recommending that the petition be denied.   On

19  February 7, 2008, the Court adopted the Report and

20  Recommendation and denied relief.

21          Petitioner appealed the District Court's decision

22  denying habeas relief to the United States Ninth Circuit Court

23  of Appeals.   On August 3, 2009, the Ninth Circuit granted a

24  certificate of appealability with regard to whether Petitioner

25  was denied the right to due process of law; and (2) whether the

26  evidence was sufficient to support his conviction for conspiracy

27  to commit deadly or dangerous assault by a prisoner.   Counsel

28  was appointed to represent Petitioner in his appellate

proceedings.

On May 26, 2011, the Ninth Circuit affirmed in part and vacated in part the District Court's decision denying the writ and remanded the matter to the District Court. On June 3, 2011, the District Court appointed counsel to represent Petitioner in these proceedings and referred the matter to the Magistrate Judge for preparation of a Report and Recommendation in light of the Ninth Circuit's opinion.

**I Background**

In March of 1997, Brent Lumley, a prison guard, was fatally stabbed by a prisoner, Leroy Cropper, at the Arizona State Prison in Perryville. *See* <u>Arizona v. Cropper</u>, 206 Ariz. 153, 155, 76 P.3d 424, 426 (2003). Mr. Cropper eventually pled guilty to first degree murder, deadly assault by a prisoner, and three counts of promoting prison contraband. The evidence introduced at a trial indicated Mr. Cropper became angry at Officer Lumley and another Detention Officer, Officer Landsberger, after these officers searched his cell and discovered contraband, including a knife. <u>See</u> <u>Arizona v. Cropper</u>, 205 Ariz. 181, 182, 68 P.3d 407, 408 (2003). At the time of the murder, Mr. Cropper's cell-mate was Lloyd Elkins. <u>Id.</u>

The following background facts are taken from the Arizona state court opinion regarding Mr. Cropper's criminal proceedings.

> Through his cell door and a common vent between cells 257 and 258, Cropper spoke to several fellow inmates about his plan to kill

2

> Officer Lumley.    Inmates Eugene Long and
> Joshua Brice agreed to help and retrieved an
> eight-inch steel carving knife buried in one
> of the Building 26 yards.  Using two
> fly-swatters attached to one another, Long
> passed Cropper the knife through the vent
> between the two cells. ...
>  Cropper needed to find a way out of his
> cell. An inmate is able to leave a locked
> cell if a fellow inmate "spins the lock" to
> his cell door. This lock picking procedure,
> performed manually on the cell door lock from
> outside the cell, bypasses the control room's
> electronic lock command. Howell and another
> inmate, Arthur Zamie, successfully opened the
> door, and then looked for Officer[] Lumley
> .... Howell and Long returned to Cropper's
> cell and told him that Lumley was in the
> control room, with the door unlocked.

Id., 205 Ariz. at 204, 68 P.3d at 408.

"Cropper left his cell, walked down the hall and entered the control room" and killed Officer Lumley using the knife supplied by Mr. Long.   Id., 205 Ariz. at 205, 68 P.3d at 409.   The Arizona state court further found Mr. Cropper hid evidence of the murder in Mr. Howell's cell, and that "Cropper returned to his cell after an unidentified inmate spun the cell door lock.   Cropper's cellmate Elkins helped him" conceal evidence of the crime.   Id.

An indictment issued April 14, 1997, charged Mr. Cropper, Mr. Howell, and Mr. Long with the murder of Officer Lumley and other crimes related to the acts surrounding the murder.   See Arizona v. Cropper, et al., No. CR1997-003949 (state court criminal docket); Arizona v. Howell, 2001 WL 34117458, Petition for Writ of Certiorari to the Supreme Court of the United States.

3

The indictment charging Petitioner with involvement in the murder of Officer Lumley was issued approximately one year later, on or about April 16, 1998.  See <u>Arizona v. Kyzar</u>, No. CR1998-005801 (state court criminal docket).  The charges were predicated on the allegation that Petitioner instructed Joshua Brice to show Mr. Long where a knife was buried at the prison, with the intent that Mr. Cropper would use the knife to kill Officer Lumley.[1]  Petitioner, as a purported leader of "white" prisoners, was alleged to have "instructed" Mr. Long to retrieve the knife and give it to Mr. Cropper. The indictment charged Petitioner with one count of conspiracy to commit dangerous or deadly assault by a prisoner, one count of dangerous or deadly assault by a prisoner, premised on accomplice liability, and one count of promoting prison contraband.  Doc. 24, Exh. DD at 9-11.

Mr. Howell's jury trial began June 16, 1998.  On June 30, 1998, the jury entered verdicts finding Mr. Howell not guilty of conspiracy to commit dangerous or deadly assault by a prisoner, not guilty of first-degree murder and not guilty of promoting prison contraband.  See <u>Arizona v. Howell</u>, 2001 WL 34117458, Petition for Writ of Certiorari to the Supreme Court of the United States.  Because the jurors were unable to reach a verdict on the charge of dangerous or deadly assault by a prisoner, the trial court declared a mistrial on that count. <u>Id.</u>  A retrial on the remaining count, dangerous or deadly

---

[1] Allegedly Mr. Brice and Mr. Long did not find a knife where Petitioner told them to look for one, but instead found a different knife which they supplied to Mr. Cropper.

4

assault by a prisoner, began on August 12, 1998, and Mr. Howell was convicted of that charge.  <u>Id.</u>[2]

After Mr. Howell's second trial in August 1998, the state moved to join the trials of Petitioner, Mr. Cropper, and Mr. Long.  Doc. 24, Exh. M.  On September 3, 1998, after hearing oral argument regarding the motion for joinder, the state trial court granted the motion from the bench.  <u>Id.</u>, Exh. M.

In May of 1999, Mr. Cropper pled guilty to all of the charges against him.  <u>See</u> <u>Arizona v. Cropper</u>, No. CR1997-003949 (Ariz.) (en banc decision).  On August 16, 1999, Petitioner's counsel moved to sever his trial from that of his remaining co-defendant, Mr. Long.  Doc. 24, Exh. AA.  The trial court denied the motion at that time, and denied the motion again when it was renewed at the close of the state's case at Petitioner's trial. <u>Id.</u>, Exh. BB & Exh. CC.

Petitioner was tried before a jury along with Mr. Long. <u>Id.</u>, Exh. BB & CC.  At Petitioner's trial, the inmate who actually committed the murder, Mr. Cropper, testified that neither Petitioner nor anyone else had been involved in the planning or commission of the murder.  <u>Id.</u>, Exh. A at 7.  Mr. Cropper testified he used a knife he had smuggled into the prison "in some legal papers" to kill Officer Lumley.  <u>See</u> <u>id.</u>,

---

[2]  Mr. Howell's trial was severed from the trial of his co-defendants because his statements to law enforcement officers raised Bruton issues.  Doc. 24, Exh. M at 12.  Mr. Brice entered into a plea agreement with the government.  <u>See</u> <u>Arizona v. Brice</u>, No. CR1997-8509. Mr. Zamie entered into a plea agreement with the government.  <u>See</u> <u>Arizona v. Zamie</u>, No. CR1997-007299.  Mr. Elkins, Mr. Fipps, and Mr. Geeslin, Petitioner's cellmate, also known as "Blue," were not charged.

Exh. A at 7.    Mr. Elkins and Mr. Brice also testified at the trial.  Doc. 68, Exh. KK & Exh. JJ.

Mr. Brice testified that Petitioner directed him to obtain the knife for Mr. Long.  <u>See</u> <u>id.</u>, Exh. KK at 131-33.  Mr. Elkins testified he observed Petitioner outside his and Mr. Cropper's cell prior to the murder of Officer Lumley and that Mr. Cropper and Petitioner had a conversation indicating Mr. Cropper wanted Petitioner to supply him with a good knife.  <u>Id.</u>, Exh. JJ at 44.  Mr. Elkins stated he had told an investigator the day after the murder that he heard Mr. Cropper tell Mr. Long to "Go get Blue and tell him I need a piece, a good one."  Doc. 28, App., Exh. H at 69 & Exh. I ("Blue" is Shaun Geeslin, who was Petitioner's cellmate).[3]

Testimony was introduced at Petitioner's trial that Petitioner was not a member of any organized prison gang and that Petitioner did not "run the yard".  <u>Id.</u>, App., Exh. D. During his closing argument, Petitioner's counsel argued that the testimony of two inmates who were not offered deals and the testimony of the prison guards contradicted Mr. Elkins' and Mr. Brice's testimony that Petitioner "ran the yard."  Doc. 24, Exh. DD at 8 & 108.

The prosecution argued to the jury that Petitioner

      set things in motion by agreeing to help
      Cropper get a knife, and Eugene Long sealed
      Officer Lumley's fate when he dug up that

---

[3] Mr. Geeslin was never charged with a crime associated with Officer Lumley's death.  When interviewed on March 8, 1997, about the murder, Mr. Geeslin stated he had no information about the murder and denied knowing Mr. Cropper.  Traverse (Docket No. 28), Exh. J.

> knife and passed it through the vent...
> As a result of the assistance of those two men, Bren Lumley died a horrible death at the age of 33 for no good reason.  The best explanation is the simplest.  Dino Kyzar and Eugene Long, because of their association with Leroy Cropper, helped him in his quest to kill Brent Lumley.

Id., Exh. DD at 31.

During closing arguments, the defendants' counsel pointed out the discrepancies in the testimony provided by the inmate witnesses.  Defense counsel called attention to the lack of physical evidence connecting either defendant to the murder weapon, i.e., fingerprints.  Defense counsel noted that, according to the testimony offered by the inmates, it was not uncommon for an inmate to possess a knife in their cell.  Petitioner's defense counsel also noted Mr. Elkins was not charged with a crime arising from his involvement in the murder and that Mr. Brice was offered a plea agreement in return for his testimony inculpating Petitioner and Mr. Long.  Id., Exh. DD.

Defense counsel pointed out to the jury that Mr. Brice had not initially implicated Petitioner in the conspiracy.  Id., Exh. DD.  Petitioner's counsel argued to the jury that, at the time of the murder, Petitioner had six months left on the sentence he was serving and reasoned that Petitioner would be unwise to involve himself in an assault on a guard when his release was imminent.  Id., Exh. DD at 116.

The jury found Petitioner guilty of conspiracy to commit deadly or dangerous assault by a prisoner, and acquitted

7

Petitioner of the other two charges.  Id., Exh. A.  Petitioner was sentenced to an aggravated term of 21 years imprisonment for this crime.  Id., Exh. A.[4]  Petitioner's co-defendant, Mr. Long, was convicted of conspiracy to commit first-degree murder or assault by a prisoner, first-degree murder, dangerous or deadly assault by a prisoner, and promoting prison contraband.  Id., Exh. A.

Petitioner, through counsel, filed a motion seeking a new trial on February 9, 2000.  Original Answer, Exh. C, Attach.  Petitioner argued, *inter alia*, that there was insufficient evidence to support his conviction.  Id., Exh. C, Attach. at 5-6.  The motion for a new trial was denied.

Petitioner took a timely direct appeal of his conviction.  Id., Exh. A.  Petitioner asserted the trial court had improperly denied his motion to sever his trial from that of his co-defendant.  Id., Exh. A.  Petitioner also asserted the trial court erred by admitting "other bad act" evidence, and that the prosecutor had engaged in misconduct.  Id., Exh. A.  The Arizona Court of Appeals affirmed Petitioner's conviction and sentence on June 28, 2001.  Id., Exh. A.  The Arizona Supreme Court denied review of the Court of Appeals' decision on October 30, 2001.  Id., Exh. B.

---

[4] At the time of his trial on the charges stated *supra*, Petitioner had finished serving the sentence of incarceration for a 1993 assault conviction, pursuant to which he was imprisoned at the Perryville prison in March of 1997.  Petitioner was held on $160,000 bond prior to trial.  Doc. 28, Exh. N.

Petitioner filed a notice of post-conviction relief in the Arizona Superior Court pursuant to Rule 32, Arizona Rules of Criminal Procedure, on November 23, 2001. See Arizona v. Kyzar, No. CR1998-005801-A. Petitioner filed a *pro se* petition for post-conviction relief on October 2, 2002. Original Answer, Exh. C. Petitioner asserted his pretrial counsel, his trial counsel, and his appellate counsel were all unconstitutionally ineffective. Id., Exh. C. Petitioner asserted his trial counsel was ineffective, *inter alia*, because he had not presented what Petitioner asserted was "newly discovered" evidence at Petitioner's trial. Id., Exh. C (Claim 13). Petitioner alleged the prosecutor had knowingly presented perjured testimony to the grand jury, in violation of his right to due process. Id., Exh. C. Petitioner further asserted the denial of effective assistance of counsel violated his constitutional right to due process of law. Id., Exh. C. Petitioner also argued a recent Arizona Supreme Court opinion undermined the soundness of his conviction for conspiracy. Id., Exh. C. Attached to Petitioner's *pro se* Rule 32 brief was his defense counsel's motion seeking a new trial. The motion seeking new trial argued there was insufficient evidence to convict Petitioner on the charge of conspiracy.

The state Superior Court considered the merits of Petitioner's claims for post-conviction relief and denied relief in a decision issued January 16, 2003. Id., Exh. D. The Superior Court determined Petitioner's claim regarding the grand jury proceedings was mooted by Petitioner's subsequent trial.

1   <u>Id.</u>, Exh. D.   The state court found Petitioner's claims of

2   ineffective assistance of counsel without merit because

3   Petitioner had not shown deficient performance by his counsel

4   nor prejudice arising from any alleged error.   <u>Id.</u>, Exh. D. The

5   state court also considered and denied Petitioner's other claims

6   for relief on the merits of those claims.   <u>Id.</u>, Exh. D.   The

7   court stated, inter alia, that Petitioner's alleged "newly

8   discovered" evidence was not newly discovered for purposes of

9   his Rule 32 action.   <u>Id.</u>, Exh. D.   The court construed

10  Petitioner's insufficient evidence claim as one pursuant to

11  <u>Evanchyk</u>[5] and denied relief based on that opinion.

12      Petitioner sought review of this decision by the

13  Arizona Court of Appeals, which denied review on March 24, 2004.

14  <u>Id.</u>, Exh. E.   The Arizona Supreme Court denied review of the

15

16      [5] In <u>Evanchyk v. Stewart</u>, 202 Ariz. 476, 47 P.3d 1114,
    1115-16 (2002), the Arizona Supreme Court considered "whether one can
17  be convicted of conspiracy to commit first-degree murder when the
    state does not prove that the killing was committed with premeditation
18  but only that it occurred in the course and furtherance of committing
    one of the underlying felonies." <u>Id.</u>, 47 P.3d at 1117, 1119. The
19  Arizona Supreme Court concluded that proof of intent to commit the
    underlying felony in a case of felony murder is not sufficient to
20  support a conviction for conspiracy to commit first-degree murder.
    <u>Id.</u>, 47 P.3d at 1117, 1119. In reaching that conclusion, the court
21  relied on state legal precedent to articulate the elements of
    conspiracy to commit premeditated first-degree murder as: "the state
22  must prove that the defendant had the intent to promote the offense
    of murder and an agreement with another one that will do the actual
23  killing." 47 P.3d at 1117. In <u>Arizona v. Phillips</u>, 202 Ariz. 427, 47
    P.3d 1048 (2002), the Arizona Supreme Court held the defendant could
24  not be found guilty of premeditated murder based on accomplice
    liability because the evidence did not show that he intended to
25  facilitate or aid in committing a murder. <u>See</u> 202 Ariz. 427, 436, 46
    P.3d 1048, 1057 (2002). However, the Supreme Court further held that
26  the defendant had committed a felony and his accomplice in that felony
    had murdered in the course of and to further that felony and,
27  accordingly, that the defendant was properly convicted of felony
    murder.

28                                          10

decision denying post-conviction relief in a decision issued November 8, 2004. Id., Exh. F.

Petitioner filed a second state action for post-conviction relief on March 24, 2005. Id., Exh. G. Petitioner asserted he was entitled to re-sentencing pursuant to the United States Supreme Court's decision in Blakely v. Washington. Id., Exh. G. The Arizona trial court determined Blakely was not applicable to Petitioner's case, which had become final before Blakely was decided. Id., Exh. G. Accordingly, the trial court concluded, Petitioner's action for post-conviction relief was not timely filed, i.e., it did not fall under the exception to the timeliness rule for cases involving a new rule of law. Id., Exh. G. The Arizona Court of Appeals denied review of this decision on February 23, 2006, and the Arizona Supreme Court also denied review in a decision issued July 31, 2006. Id., Exh. H & Exh. I.

In his federal habeas petition, Petitioner asserted, inter alia, that there was insufficient evidence to support Petitioner's conviction on the conspiracy charge. In the first Report and Recommendation, the Magistrate Judge concluded that each of Petitioner's claims could be denied on the merits regardless of any failure to exhaust some of the claims, as asserted by Respondents.

In 2011, the Ninth Circuit Court of Appeals affirmed in part and vacated in part the District Court's decision denying Petitioner relief. The Ninth Circuit remanded the case to the District Court to reconsider Petitioner's insufficiency of the

11

evidence claim in light of the trial transcripts which were not made available to the District Court during the pendency of the section 2254 petition.

The Court ordered the matter be briefed.  Petitioner, through appointed counsel, briefed the issues addressed by the Ninth Circuit to the Court.  Respondents filed an answer to the petition addressing the Ninth Circuit's remand and maintaining the petition must be denied.

**II Argument**

Petitioner asserts:

> The evidence implicating Kyzar in the plot to kill Brent Lumley was predicated mainly upon the unreliable and incredible testimony of fellow inmates Lloyd Elkins and Joshua Brice. In fact, the evidence against Kyzar was so untrustworthy that, significantly, if not dispositively, the counts based upon it were expressly rejected by the jury by their verdicts.
> The linchpin of the prosecution's case was two-fold: (1) Elkins testified that he observed Kyzar outside Elkins and Cropper's cell at a time prior to the stabbing death of Brent Lumley. [] However his testimony on this point was severely impeached on cross-examination regarding this subject with both his prior statements to police and his testimony in a previous trial. [] Significantly, Elkins' trial testimony was also not corroborated by the only-non-inmate witness to the events, Officer Landsperger. []; and (2) Brice testified that Kyzar directed him to obtain the knife for inmate Long.[] However, this claim was also uncorroborated and expressly contradicted by two other inmate witnesses, i.e., Keith Balmos [] and Dave Thomas [].

Doc. 62 at 8 (internal citations omitted).

Petitioner further argues:

> [T]here was no scientific, forensic or

1
2
3
4

> physical proof linking this defendant to the
> conspiracy in this case. There was no
> substantial evidence that Kyzar agreed to
> anything in this case. However, despite the
> complete lack of evidence, Kyzar was
> convicted of conspiracy to commit a dangerous
> assault by a prisoner.

5 Id. at 8-9.

6      Noting that Petitioner was acquitted on the charges of

7 aiding the assault and promoting prison contraband, Petitioner

8 asserts:

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

> The record in this case contains
> insufficient evidence to support Kyzar's
> conviction for conspiracy to commit a
> dangerous or deadly assault by a prisoner.
> The government failed to prove that Kyzar
> participated in the conspiracy to assault
> Officer Lumley. In Arizona, to successfully
> prosecute Kyzar on the conspiracy charge,
> the government was required to prove: (1)
> that within the charged time frame, i.e.,
> March 7, 2009, with the intent to promote or
> aid in the commission of the assault, Kyzar
> agreed with one or more people that at least
> one of them would commit the crime of a
> dangerous or deadly assault by a prisoner;
> and (2) that Kyzar or another person
> involved in the agreement intentionally,
> knowingly, or recklessly caused physical
> injury to another person using an item that
> is capable of inflicting death or serious
> physical injury. A.R.S. §§ 13-105(11),
> -1003, -1203, -1206. Here, the evidence was
> too weak; a reasonable factfinder could not
> find all the elements of conspiracy beyond a
> reasonable doubt.... aiding in the assault,
> and obtaining, possessing or conveying the
> knife used in the assault.
>  Thus, the specific allegations that Kyzar
> promoted and aided in the commission of the
> assault by Cropper by making the knife
> available to Cropper were found not true by
> the jury by way of their verdicts of not
> guilty on aiding in the assault (count two)
> and promoting prison contraband, i.e., the
> knife (count three).

27 Id. at 10-11.

28

Petitioner argues:

> On review, even viewing the evidence in the light most favorable to the government, the evidence was still insufficient to show that Kyzar had a connection to the conspiracy. The principal evidence presented to the jury was: (1) The testimony of Lloyd Elkins that he saw Kyzar outside his cell at some time prior to the stabbing of Lumley; and (2) the discounted testimony of Joshua Brice that Kyzar directed him to obtain the knife for codefendant Long. The jury clearly did not believe Brice as they acquitted Kyzar of counts two and three: aiding Cropper in the assault (count two) and promoting prison contraband, to wit: the knife used in the assault (count three).
> ***
> Moreover, there is not testimony that Kyzar *provided* the knife to Cropper, only testimony that Kyzar told Brice to show Long where a shank could be found and then testimony that *no shank was found*, but that instead some other inmate named *Cliff showed Long where to find a knife* []. Further, there was also no testimony that Kyzar was "the ringleader of the conspiracy who monitored the operation once he gave his approval to Cropper." Rather, there was disputed testimony that Geeslin and Kyzar "ran the yard," impeached testimony that Kyzar asked Fipps to see "if everything was handled," and absolutely no testimony that Cropper solicited from, or that Kyzar actually gave, "permission" or "approval" to commit the assault.

Id. at 11-12 (emphasis in original).

Respondent argues that Petitioner's claim of insufficient evidence was procedurally defaulted and that the District Court erred in adopting a Report and Recommendation that determined this claim could be denied on the merits without determining whether the claim was exhausted. Because the Ninth Circuit Court of Appeals ordered the District Court to reconsider the issue of whether Petitioner's right to due process was

14

violated because there was insufficient evidence to sustain his conviction, based on the availability of trial transcripts, the Magistrate Judge will not discuss the issue of exhaustion.

### III Analysis

In Petitioner's state action for post-conviction relief, the Arizona state appellate court considered, or at least reviewed, the merits of Petitioner's allegation that there was insufficient evidence to sustain his conviction.  The court did so in the context of reviewing his counsel's performance with regard to Petitioner's motion for a new trial and Petitioner's contention that his conviction was against the weight of the evidence.  Although the state court did not explicitly use the federal standard established by the United States Supreme Court's opinion in Jackson v. Virginia when considering these claims, the issue before the District Court, per the Ninth Circuit Court of Appeals' remand, is whether Petitioner's federal constitutional right to due process was violated because there was insufficient evidence to sustain a finding of guilt on the single count of conviction.

When undertaking habeas review of a state court decision rejecting a claim of insufficiency of the evidence, the Court's inquiry is limited; the Court may ask only whether the state court's decision was contrary to or reflected an unreasonable application of Jackson to the facts of a particular case.  See McDaniel v. Brown, 130 S. Ct. 665, 673 (2010).  A due process claim based on insufficiency of the evidence can only succeed when, viewing all the evidence in the light most

15

favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.   See Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2792 (1979).

Because reversal for insufficiency of the evidence is equivalent to a judgment of acquittal, "a reviewing court must consider all of the evidence admitted by the trial court," regardless whether that evidence was admitted erroneously. McDaniel, 130 S. Ct. at 672.   The Court must review the evidence presented to the trier of fact "in the light most favorable to the prosecution."   Jackson, 443 U.S. at 319, 99 S. Ct. at 2789.

> In reviewing the sufficiency of evidence, we may grant habeas relief only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781 []. In this review, all evidence must be considered in the light most favorable to the prosecution, and we presume "that the trier of fact resolved any [conflicting inferences] in favor of the prosecution." Jackson, 443 U.S. at 326, 99 S. Ct. 2781. Furthermore, "[a]fter AEDPA, we apply the standards of Jackson with an additional layer of deference" to state court findings. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).

Ngo v. Giurbino, 651 F.3d 1112, 1115 (9th Cir. 2011) (some internal citations omitted).

Insufficient evidence claims are reviewed by looking at the elements of the offense under state law and, when determining whether sufficient evidence supports a conviction, the federal courts are bound by a state court's interpretation of state law. See Emery v. Clark, 643 F.3d 1210, 1213–14 (9th Cir. 2011).

16

Additionally, circumstantial evidence and inferences drawn from circumstantial evidence are sufficient to sustain a conviction. See, e.g., Giurbino, 651 F.3d at 1114-15.

"The elements of [Arizona Revised Statutes] § 13-1206, dangerous or deadly assault by a prisoner, are: 1) a person in the custody of the Department of Corrections, 2) commission of an assault, and 3) use of a deadly or dangerous instrument, or infliction of serious physical injuries." Arizona v. Williams, 144 Ariz. 479, 486, 698 P.2d 724, 731 (1985). To prove conspiracy, pursuant to Arizona law, the prosecution was required to prove that Petitioner "inten[ded] to promote or aid the commission of the assault". See Ariz. Rev. Stat. § 13-1003(A);[6] Arizona v. Gessler, 142 Ariz. 379, 383, 690 P.2d 98, 102 (Ct. App. 1984) (noting that the crime of conspiracy focuses on the agreement to commit a criminal act).

Mr. Elkins testified that after Mr. Cropper asked to see them, Petitioner and "Blue" (Mr. Geeslin) appeared at the cell. Doc. 68, Exh. JJ at 41. He testified that when Petitioner

---

[6] This subsection provides:
A person commits conspiracy if, with the intent to promote or aid the commission of an offense, such person agrees with one or more persons that at least one of them or another person will engage in conduct constituting the offense and one of the parties commits an overt act in furtherance of the offense, except that an overt act shall not be required if the object of the conspiracy was to commit any felony upon the person of another, or to commit an offense under § 13-1508 [burglary] or 13-1704[arson].

was at the window of the cell, he overheard Mr. Cropper and Petitioner discuss Mr. Cropper's desire to acquire a knife. _Id._, Exh. JJ at 43-44.   Mr. Elkins testified that, after this occurred, a knife was passed through a vent to Mr. Cropper in their cell, Mr. Cropper left the cell, and that Mr. Cropper returned to the cell and stated that he had used that knife to kill Mr Lumley. _Id._, Exh. JJ at 49-51.

Mr. Brice testified that he was present when a knife was passed through a vent to Mr. Cropper and that, after Mr. Lumley was killed, Petitioner told him to "keep [his] mouth shut".   _Id._, Exh. LL at 35.   Mr. Brice also testified that Petitioner told Mr. Brice to show Mr. Long "where the shank is," meaning where in the prison yard Mr. Brice had kept watch while another prisoner buried a knife. _Id._, Exh. LL at 46; Exh. KK at 131-32 & 135-37.   Mr. Brice testified that Mr. Long did not retrieve a buried knife, but that he did see Mr. Long retrieve a knife from elsewhere in the prison yard. _Id._, Exh. KK at 141-44.

Respondent contends:

> Petitioner's agreement to the intent of the conspiracy was demonstrated by evidence that: 1) Cropper had requested to see him after becoming upset at the guards; 2) Cropper made a stabbing motion while asking Petitioner for a knife; 3) Petitioner asked Cropper whether he was "sure about this" and wanted to know how Cropper's actions might affect the length of Cropper's incarceration; and 4) Petitioner's instructions to Brice to "keep [his] mouth shut" after the stabbing.
>   Petitioner undertook the overt action necessary to further the conspiracy by directing Brice to assist in the process of

18

> Cropper's obtaining a knife. <u>Stanley</u>, 123 Ariz. at 104, 597 P.2d at 1007 (overt act "can be any act which naturally advances the intent of the conspiracy").
> ***
> Petitioner's instructions to Brice to assist in obtaining a knife constituted the necessary overt act. The crime of conspiracy was complete at that point; any subsequent events are irrelevant. <u>Gessler</u>, 142 Ariz. at 383, 690 P.2d at 102 (crime of conspiracy focuses on agreement). Viewing the evidence in the light most favorable to the prosecution, as this Court must, <u>Jackson</u>, 443 U.S. at 318-19, sufficient evidence supports Petitioner's conviction for conspiracy to commit deadly or dangerous assault by a prisoner.

Doc. 68 at 12-13.

After a thorough review of the trial transcripts, the Magistrate Judge concludes that a rational trier of fact could have found proof of guilt beyond a reasonable doubt. Petitioner was convicted of conspiracy to commit dangerous or deadly assault by a prisoner. The jury was properly instructed on the law and the elements of the crime of conviction. The state's summary of the facts in the pleadings upon habeas review is accurate and does not overstate the evidence.

Petitioner need not have participated in an overt act himself to be found guilty of conspiracy; the prosecution was only required to prove that a co-conspirator committed an overt act. This distinction is the difference between guilt predicated on aiding and abetting, and guilt predicated on the theory of conspiracy. Guilt based on participation in a conspiracy permits conviction based on the defendant's agreement to join a conspiracy to commit a crime, whereas the focal point of guilt

predicated on a theory of aiding and abetting requires proof the defendant himself acted in furtherance of the crime.   In this matter Petitioner agreed to use his influence over other inmates to cause one of them to locate a shank and provide it to Mr. Cropper so that he could retaliate against a guard.   The evidence also established that Petitioner then tried to get a participant in the conspiracy to keep silent after the guard was murdered.

Although evidence of Petitioner joining the conspiracy is thin, finding there was not sufficient evidence under the Jackson standard, i.e., that no reasonable fact-finder could have found Petitioner guilty beyond a reasonable doubt, would require a redetermination of the credibility of the witnesses, i.e., Mr. Brice and Mr. Elkins.

The United States Supreme Court recently offered guidance regarding the proper evaluation of an insufficient evidence habeas claim, reversing a decision of the Ninth Circuit Court of Appeals, in Cavazos v. Smith, 132 S. Ct. 2 (2011).

> The opinion of the Court in Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, [](1979), makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.   A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable." Renico v. Lett, 559 U.S. ----, ----, 130 S. Ct. 1855, 1862, [] (2010) (internal quotation marks omitted).

20

> Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold. The Court of Appeals in this case substituted its judgment for that of a California jury on the question whether the prosecution's or the defense's expert witnesses more persuasively explained the cause of a death. For this reason, certiorari is granted and the judgment of the Court of Appeals is reversed.
>
> ***
>
> That conclusion [Ninth Circuit granting writ] was plainly wrong. Jackson says that evidence is sufficient to support a conviction so long as "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S., at 319, 99 S. Ct. 2781. It also unambiguously instructs that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id., at 326, 99 S. Ct. 2781.

132 S. Ct. at 4-5.

Petitioner argues that no reasonable fact-finder could have found him guilty because the testimony of the inmate witnesses was impeachable, contradicted, or not credible. However, if a rational jury chose to believe the testimony of the inmate witnesses, then Petitioner is not entitled to relief. See Marshall v. Lonberger, 459 U.S. 422, 434, 103 S. Ct. 843, 851 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.");

1   <u>Matthews v. Abramajtys</u>, 319 F.3d 780, 788-89 (6th Cir. 2003). The
2   jurors rendered their collective credibility determinations by
3   convicting Petitioner of conspiracy.

4           **IV Conclusion**

5           Having thoroughly reviewed the trial transcripts in
6   this matter and the pleadings upon habeas review, the Magistrate
7   Judge concludes that the state court did not unreasonably
8   conclude that there was sufficient evidence to convict Petitioner
9   of the crime charged.  A reasonable finder of fact assessing the
10  credibility of the witnesses could find each element of the crime
11  of conviction.

12

13          **IT IS THEREFORE AGAIN RECOMMENDED that** Mr. Kyzar's
14  Petition for Writ of Habeas Corpus be **denied**.

15

16          This recommendation is not an order that is immediately
17  appealable to the Ninth Circuit Court of Appeals.  Any notice of
18  appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate
19  Procedure, should not be filed until entry of the district
20  court's judgment.

21          Pursuant to Rule 72(b), Federal Rules of Civil
22  Procedure, the parties shall have fourteen (14) days from the
23  date of service of a copy of this recommendation within which to
24  file specific written objections with the Court.  Thereafter, the
25  parties have fourteen (14) days within which to file a response
26  to the objections.   Pursuant to Rule 7.2, Local Rules of Civil
27  Procedure for the United States District Court for the District
28                                  22

of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length.

Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

Pursuant to 28 U.S.C. foll. § 2254, R. 11, the District Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The undersigned recommends that, should the Report and Recommendation be adopted and, should Petitioner seek a certificate of appealability, a certificate of appealability should be denied because Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C.A § 2253(c)(2).

DATED this 16th day of May, 2012.

Mark E. Aspey
United States Magistrate Judge