**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Dino Wayne Kyzar, | ) | No. CV 06-2015-PHX-SRB |
| Petitioner, | ) | **ORDER** |
| vs. | ) | |
| Charles L. Ryan; State of Arizona Attorney General, | ) | |
| Respondents. | ) | |

On May 26, 2011, the Ninth Circuit Court of Appeals entered its order affirming in part and vacating and remanding in part this Court's prior order denying Petitioner's Petition for Writ of Habeas Corpus. The Court of Appeals directed the Court to review portions of the trial transcripts relevant to Petitioner's insufficiency of the evidence claim. Subsequent to the issuance of the mandate, this Court appointed counsel to represent Petitioner and referred the matter back to the Magistrate Judge for a Report and Recommendation on the insufficiency of the evidence claim. The Magistrate Judge ordered briefs to be filed. Petitioner's counsel filed her Brief on Remand and Merits Reply on August 5, 2011, and January 9, 2012, respectively. Respondents filed their Merits Response on November 8, 2011.

On May 17, 2012, the Magistrate Judge issued his Report and Recommendation concluding that the state court did not unreasonably conclude that there was sufficient evidence to convict Petitioner of the crime charged because a reasonable fact finder assessing the credibility of the witnesses could find each element of the crime of conviction. The Magistrate Judge recommended that Petitioner's Petition for Writ of Habeas Corpus be denied. Petitioner filed timely written objections to the Magistrate Judge's Report and Recommendation upon Remand on July 2, 2012.

After this Court reviewed the portions of the record submitted in connection with the original Petition for Writ of Habeas Corpus and with Respondents' November 8, 2011 Merits Response, the Court ordered that Respondents provide a copy of the transcript of the entire state court trial involving Petitioner. The additional transcripts were filed on September 26, 2012. This Court has now reviewed the entire trial transcript and has carefully read all witness testimony relevant to the charges against Petitioner. After this *de novo* review the Court agrees with the Report and Recommendation of the Magistrate Judge that a reasonable finder of fact assessing the credibility of the witnesses could find each element of the crime of conviction, Conspiracy to Commit Deadly or Dangerous Assault by a Prisoner.[1]

## I. Summary of Evidence Against Petitioner[2]

Former inmate Joshua Brice testified that he arrived at the Perryville Prison the day before Thanksgiving in 1996 and from that date until the date of the murder of Corrections Officer Brent Lumley resided in Building 26 of the San Juan Unit. (Doc. 68, Merits Resp., Ex. KK at 102.) Brice testified that approximately a month before the murder he was tasked to keep watch while an inmate named Jonas Meza buried a knife in the dirt in the Building 26 yard. (*Id.* at 135.) Brice related that he first met Petitioner Dino Kyzar when Kyzar arrived at the San Juan Unit in approximately January of 1997. Although Kyzar was initially

---

[1] The jury acquitted Petitioner on the charges of Deadly or Dangerous Assault by a Prisoner based on accomplice liability and Promoting Prison Contraband.

[2] The Court will summarize the evidence in chronological order of relevant events.

1  assigned to Building 30 and then 24, Brice met him in the main rec yard and would work out,
2  walk the track and play sports with him. He was also able to observe that Kyzar and Leroy
3  Cropper were friends. *(Id.*at 113-117.) Brice also met Kyzar's roommate Shawn "Blue"
4  Gieslin in approximately late January 1997. Gieslin and Kyzar were cell mates in Building
5  24 and continued as cell mates after they moved to Building 26. (*Id.* at 118-119.) Brice also
6  testified that Kyzar and Gieslin were the inmates at Building 26 that had power and authority
7  over the other white inmates. Brice spent a lot of time with Kyzar and Gieslin and also ran
8  errands for them. (Merits Resp. Ex. LL at 38, 40-41.) As Brice stated in response to the
9  prosecutor's question, "Why did you hang around Mr. Gieslin and Mr. Kyzar?," "I was 19
10 years old and in the state penitentiary, and I saw real quick that by hanging out with those
11 guys, you didn't have any problems in prison." (*Id.* at 46.)

12       Both inmates and corrections officers testified that Leroy Cropper became enraged
13 at Officers Lumley and Landsperger after they searched his cell on March 7, 1997 around
14 10:30 a.m. and confiscated certain contraband and other property belonging to Cropper.
15 Cropper admits this (Doc. 79, Notice of Filing of Transcript ("Notice of Filing"), Ex. XX at
16 109-115.), his cell mate Lloyd Elkins observed it (Merits Resp., Ex. KK at 38-40.) and both
17 Officer Lansburger and Captain Matson observed it. (Notice of Filing, Ex. SS at 166-168,
18 192; Merit Resp., Ex. LL at 216.) As a result of the discovery of the contraband in Cropper's
19 and Elkins' cell, they were locked in their cell immediately after the search and were to
20 remain locked in their cell until an administrative hearing could be held the following
21 Monday morning (March 7, 1997, was a Friday).

22       Cropper's cell mate Lloyd Elkins testified that after he and Cropper were locked in
23 their cell, Cropper had a conversation through the vent between their cell 258 and Eugene
24 Long and Brent Howell's cell 257. Elkins testified that Cropper told Eugene Long through
25 the vent to get Dino and Blue after lunch. (Merits Resp.*,* Ex. JJ at 38-39.) Elkins testified
26 that shortly after lunch Kyzar and Gieslin arrived at the door of their cell. Elkins said he
27 could see Kyzar's face in the cell window. According to Elkins, Leroy Cropper said to
28 Kyzar, "I want the good one," and Kyzar responded, "I ain't got it you got it." Kyzar then

1  said, "Well are you sure about this? How much time you got, homeboy?" Cropper
2  responded that it didn't matter because he was a career criminal. Elkins also testified that at
3  the time Cropper stated, "I want the good one," he was making a gesture with his hands "just
4  like you are stabbing somebody." Elkins also stated that after Kyzar told him that Cropper
5  had the good one, Cropper told Kyzar, "Get me any one." (*Id.* at 43-44.) At the end of the
6  conversation between Cropper, Kyzar and Gieslin, Elkins testified Cropper told Kyzar and
7  Gieslin that they needed to get off the yard. (*Id.* at 46.)

8  After Kyzar and Gieslin spoke to Cropper at his cell they, along with Eugene Long,
9  approached Joshua Brice as he was walking out of the lunch room heading back to his cell.
10 Kyzar told Brice to show Eugene Long where the shank was. "Shank" is a slang term for a
11 knife. Brice told Kyzar he didn't know exactly where it was and Kyzar told him to just show
12 Eugene Long the general area. Brice and Eugene Long then went over to the B Pod of
13 Building 26 and Brice showed him where he thought the knife was. (Merits Resp., Ex. KK
14 at 130-133.) The knife Joshua Brice was trying to help Eugene Long find was the one buried
15 by Jonas Meza about a month earlier while Joshua Brice kept a lookout. (*Id.* at 135.) Brice
16 and Eugene Long then sat down and Brice kept a lookout while Eugene Long started digging
17 with some type of plastic utensil. They did not find the knife that Jonas Meza had buried.
18 (*Id.* at 137-138.)

19 The testimony of Joshua Brice, David Thomas, and Keith Balmos was that while
20 Eugene Long was digging, another inmate named Cliff called over to Brice and Eugene Long
21 and directed them to another location where some other knives had been buried by an inmate
22 named Brent several months earlier. (*Id.* at 83-85, 139-143, Notice of Filing , Ex. SS at 43-
23 44, 47.) This knife buried by an inmate named Brent, rather than the knife Kyzar told Brice
24 to locate for Eugene Long, was the knife that was eventually given to Leroy Cropper and
25 used by him to kill Officer Lumley.

26 Inmate Dave Fipps testified that on March 7, 1997, when he was heading towards the
27 Building 26 yard after having gone to the law library and checked the property room in the
28 main administration building, he encountered Kyzar and Gieslin on their way off the yard

- 4 -

1  going to the main administration building to get pictures taken. Gieslin stated in the presence
2  of Kyzar for Fipps to go to Eugene's house and see if everything was handled. (Notice of
3  Filing, Ex. VV at 37-39.)

4  When Officer Lumley was discovered in the control room, a lock down was called
5  over the prison PA system. Brice testified he had been in the main administration building
6  waiting in line to check his property when the lock down was called. While attempting to
7  make his way back to the Building 26 yard and to his cell, he encountered Kyzar and Gieslin
8  also walking toward the Building 26 yard. Before they reached the gates that would allow
9  them into the yard, Department of Corrections officials told them to stay where they were,
10 and the three of them along with approximately 50 other inmates were eventually escorted
11 as a group to a chain link cage and remained in there for approximately 45 minutes. While
12 they were in the cage they observed Bruce Howell, Eugene Long, Leroy Cropper and Lloyd
13 Elkins being escorted, chained up, across the yard. Brice observed guards yelling at Leroy
14 Cropper. He testified that people were crying and yelling. He saw an ambulance stop in yard
15 26. He saw a helicopter land and take off. After approximately 45 minutes, corrections
16 officers came to the cage and asked inmates one at a time what cell they were in, patted them
17 down and then escorted them into yard 26. Before he left the cage Kyzar told Joshua Brice
18 to keep his mouth shut. (Merits Resp., Ex. LL at 30-35.)

19 In summary the evidence supporting Kyzar's conviction for Conspiracy to Commit
20 Deadly or Dangerous Assault by a Prisoner was that Leroy Cropper asked Kyzar to get him
21 a knife and while asking Kyzar to get the knife made a gesture indicating his intent to use the
22 knife to stab someone. The jury could reasonably infer from Kyzar's questions to Cropper
23 that he understood Cropper's intent was to stab someone because he asked him if he was sure
24 about this and how much time he had left to serve. Kyzar then directed Joshua Brice to show
25 Eugene Long where a knife had been buried by inmate Jonas Meza about a month earlier in
26 Brice's presence. The jury could infer that Kyzar knew about Brice assisting in the burying
27 of this knife since Jonas Meza was observed to be one of Kyzar's friends and someone with
28 whom Kyzar regularly associated. Kyzar also was one of the inmates who along with his cell

- 5 -

mate, Gieslin, had power and authority over the other white inmates on yard 26. Eugene Long and Brice were not able to locate the knife that Kyzar had directed them to obtain. Instead they received assistance from another inmate in finding a knife buried earlier by an inmate named Brent. Officer Lumley was killed with a knife not supplied at the direction of Kyzar but by a knife found when Eugene Long and Brice could not find the knife Kyzar had instructed them to get for Leroy Cropper. After Cropper stabbed Officer Lumley and while Kyzar, Geislin and Brice were observing the commotion in yard 26 and the removal of Cropper, Elkins, Long and Howell in chains, Kyzar warned Brice to keep his mouth shut.

## II. Legal Standards

The Report and Recommendation of the Magistrate Judge accurately sets forth the legal standards for this Court's habeas review of Petitioner's due process claim based on insufficiency of the evidence. Petitioner makes no objection to the Report and Recommendation's summary of that standard. The parties agree that this Court must view the evidence in the light most favorable to upholding the conviction and must determine whether any rational trier of fact could have found guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-319 (1979). The parties also agree that Petitioner's insufficiency of the evidence claim must be reviewed by looking at the elements of the offense of conviction under state law and that this Court is bound by the state court's interpretation of its law. *See Emery v. Clark,* 643 F.3d 1210, 1213-14 (9th Cir. 2011).

Kyzar was convicted of Conspiracy to Commit Deadly or Dangerous Assault by a Prisoner. The jury was instructed as follows:

> The crime of Conspiracy to Commit Dangerous or Deadly Assault by a Prisoner requires proof of the following things:
> 1. That the Defendant agreed with one or more persons that one of them or another person would engage in conduct constituting the crime of Deadly Assault by a Prisoner; and
> 2. That the Defendant intended to promote or assist the commission of such conduct.

(Notice of Filing ,Ex. BBB at 163-164.) [3] The issue the jury had to decide and the issue before this Court on habeas review is whether there was sufficient evidence to find that Kyzar agreed to and intended to promote or assist the commission of Leroy Cropper's subsequent assault.

**III. Objections to Magistrate Judge's Report and Recommendation upon Remand**

Petitioner argues that the Magistrate Judge erred in concluding that the state court's rejection of Petitioner's insufficiency of the evidence claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law. Petitioner asserts that the Magistrate Judge improperly relied on material facts from sources outside of the evidence presented at Petitioner's trial by citing in the Background portion of the Report and Recommendation facts recited in the Arizona state court opinions in the cases against Leroy Cropper and Bruce Howell. Petitioner asserts that the Magistrate Judge used "bootstrapped" facts extrapolated from other sources and never heard by Petitioner's jury to support the finding that Petitioner should be denied habeas relief.

While the Court agrees with Petitioner that facts not heard by Petitioner's jury cannot be used or relied upon in determining the sufficiency of the evidence, the Court disagrees with Petitioner's assertion that the Magistrate Judge did this here. This section of the Report and Recommendation is clearly denominated as Background. In the Magistrate Judge's Analysis section of the Report and Recommendation the only evidence relied upon in support of his recommendation is evidence obtained from the trial transcripts in the trial against Petitioner. Moreover, this Court's *de novo* review of the record confirms that Petitioner was not denied due process because his conviction was supported by sufficient evidence.

---

[3] While both the Respondents and the Magistrate Judge discuss the requirements for an overt act in connection with the crime of conspiracy, Arizona law does not require the commission of an overt act for this charged conspiracy. *See* A.R.S. § 13-1003A. This issue is of no consequence, however, because overt acts were committed by Leroy Cropper. Not only did Cropper enter into a conspiracy to commit deadly or dangerous assault by a prisoner but he actually committed the crime of deadly assault by a prisoner when he killed Officer Lumley.

- 7 -

1    Petitioner also objects to the Magistrate Judge's reliance on *Cavazos v. Smith*, 132 S.
2 Ct. 2 (2011).  In *Cavazos* the Supreme Court held that when a reviewing court is faced with
3 facts that support conflicting inferences it must presume that the trier of fact resolved any
4 such conflicts in favor of the prosecution and must defer to that resolution. *Id.,* at 5. The
5 Magistrate Judge concluded, "if a rational jury chose to believe the testimony of the inmate
6 witnesses then Petitioner is not entitled to relief" because "[t]he jurors rendered their
7 collective credibility determinations by convicting Petitioner of conspiracy." (Doc. 73,
8 Report and Recommendation at 21-22.)  According to the Petitioner, this conclusion by the
9 Magistrate Judge ignored that a number of facts were resolved in Petitioner's favor by virtue
10 of the jury's acquittal on the charges of Dangerous or Deadly Assault by a Prisoner based on
11 accomplice liability and Promoting Prison Contraband. Petitioner argues that implicit in the
12 jury's verdicts were the conclusions that Petitioner did not aid in obtaining the knife used to
13 assault Officer Lumley and Petitioner did not aid Cropper in the deadly assault on Officer
14 Lumley.
15    Petitioner argues that the Magistrate Judge relied on the alleged fact that Petitioner
16 used his influence over other inmates to cause one of them to locate a knife to provide to
17 Cropper so that he could retaliate against a guard and that Petitioner then tried to get a
18 participant in the conspiracy to keep silent after the guard was murdered.  Petitioner points
19 out, and the Court agrees, that there was no evidence that Petitioner knew that Cropper
20 wanted a knife to retaliate against Officer Lumley, nor any evidence that Petitioner agreed
21 to obtain a knife for this specific purpose. However, the crime of Conspiracy to Commit
22 Deadly or Dangerous Assault by a Prisoner does not have as one of its elements that the co-
23 conspirator must know who was to be assaulted. The evidence does support the jury's finding
24 that Kyzar agreed to obtain a knife for Leroy Cropper so that Cropper could stab someone.
25 There was sufficient evidence from which the jury could find that Kyzar agreed to and
26 intended to assist Leroy Cropper in the commission of the crime of Dangerous or Deadly
27 Assault by a Prisoner.
28    Petitioner argues that there was evidence at trial showing that it was not uncommon

1 for prisoners to have knives in their cells for protection and that Petitioner had previously
2 obtained a knife for Cropper without him stabbing someone. While this is true, the jury was
3 presented with evidence that Cropper asked Kyzar for the knife that day demonstrating his
4 intent to use it to stab someone and evidence that Kyzar understood what Cropper intended
5 to do with the knife. The Court disagrees with Petitioner's claim that Respondents have to
6 prove that Petitioner joined the conspiracy knowing that there was a plan to assault Officer
7 Lumley. Nothing in the elements of the state crime require that the conspirator know the
8 identity of the individual against whom the crime is intended to be committed. The Court also
9 disagrees with Petitioner's argument that Brice was not a participant in the conspiracy
10 because he was never charged in the conspiracy. Petitioner cites no authority, and the Court
11 is unaware of none, that requires the state to charge all members of the conspiracy.

12 The Court also disagrees with Petitioner in his claim that the jury chose not to believe
13 the testimony of Brice and Elkins as evidenced by the not guilty verdicts on Counts 2 and 3.
14 Based on this Court's review of the evidence it seems clear that the jury believed the
15 testimony of Brice and Elkins. There was nothing inconsistent in their verdicts of acquittal
16 on Counts 2 and 3 and the acceptance of the testimony of Brice and Elkins.

17 Petitioner was charged with Promoting Prison Contraband. The jury was instructed
18 as follows: "The crime of Promoting Prison Contraband requires proof that a person
19 knowingly obtained, possessed or conveyed contraband during the person's confinement in
20 a correctional facility." (Notice of Filing, Ex. BBB at 164.) The evidence before the jury was
21 that Kyzar never obtained, possessed or conveyed the knife to Cropper because Eugene Long
22 and Brice couldn't find the knife that Kyzar agreed to provide. The knife was provided by
23 another inmate after Brice and Long were unable to locate the knife Kyzar directed Brice to
24 find.  If the jury  believed Brice, the jury would have to conclude that while Kyzar might
25 have wanted to convey a knife to Cropper so that Cropper could commit an assault, he was
26 unsuccessful in doing so.

27 Kyzar was also charged with Dangerous or Deadly Assault by a Prisoner based on
28 accomplice liability.  The jury was instructed as follows:

> A person may be guilty of an offense committed by such persons own conduct or by the conduct of another for which such person is criminally accountable.
>
> A person is criminally accountable for the conduct of another person if the person is an accomplice of such other person in the commission of an offense.
>
> Accomplice is a person who:
> 1) Solicits or commands another person to commit the offense; or
> 2) Aids, councils, agrees to aid or attempts to aid another person in planning or committing the offense; or
> 3) Provides means or opportunity to another person to commit the offense.

(*Id.* at 161.)

There was no evidence that Kyzar solicited or commanded Cropper to commit the offense. If the jury believed Joshua Brice's testimony about the knife that was found by Eugene Long and eventually provided to Cropper, Kyzar did not provide the means for Cropper to commit the offense. There was no evidence that he provided the opportunity to Cropper to commit the offense. A rational jury believing Brice and Elkins could also conclude that Kyzar did not aid or counsel Cropper in planning or committing the offense and did not agree to aid or attempt to aid Cropper in planning the offense. The jury could have found Kyzar guilty of agreeing to aid or attempting to aid Cropper in committing the offense but did not perhaps because he was unsuccessful in his attempt or perhaps because the jury decided the crime of conspiracy better fit Kyzar's role than accomplice liability did.

The jury may also have decided to find Kyzar not guilty of Dangerous or Deadly Assault by a Prisoner as an Accomplice based on the way the state argued Kyzar's guilt on this charge. In its closing argument the state argued that for Kyzar to be found guilty of Dangerous or Deadly Assault by a Prisoner as an Accomplice the evidence must show that Kyzar directly or indirectly provided assistance to Leroy Cropper. The state argued that it must prove that Kyzar aided Leroy Cropper in the assault of Officer Lumley. The state asserted that Brice followed Kyzar's instructions to help Long get a knife and that Long took the same knife that he was eventually able to dig up, passed it through the vent to Cropper and Cropper used it to kill Officer Lumley. The state argued that this was the evidence in

- 10 -

1  support of Kyzar's guilt on Count 2. (*Id.* at 10, 16-19.)  But if, as the Court concludes, the
2  jury believed the testimony of Joshua Brice, Kyzar was unable to aid Leroy Cropper because
3  Long was unable to find the knife that Brice had helped to bury with Jonas Meza. While the
4  state argued that Long took the knife that he dug up and that knife was used by Cropper to
5  kill Lumley, the knife that Long found and passed to Cropper was unconnected to the knife
6  Kyzar intended to help provide to Cropper. The Court concludes that the acquittals on Counts
7  2 and 3 are fully consistent with the evidence against Kyzar and his culpability for Cropper's
8  assault on Officer Lumley and do not demonstrate that the jury did not believe the testimony
9  of Brice and Elkins.[4]

## IV.  Conclusion

The Court agrees with the Report and Recommendation of the Magistrate Judge that the state court did not unreasonably conclude that there was sufficient evidence to convict Petitioner of the crime of Conspiracy to Commit Dangerous or Deadly Assault by a Prisoner and that a reasonable finder of fact assessing the credibility of the witnesses could find each element of the crime of conviction. The Court does not agree with the Magistrate Judge's conclusion that the evidence was "thin" or that there was a requirement that anyone commit an overt act.

IT IS ORDERED overruling the Objections to the Magistrate Judge's Report and Recommendation upon Remand.

IT IS FURTHER ORDERED that the Petition for Writ of Habeas Corpus is denied.

/ / /
/ / /
/ / /
/ / /
/ / /

---

[4] Petitioner concedes that any inconsistency in the verdicts alone is not grounds to reverse his conviction for Conspiracy if supported by sufficient evidence. (Doc. 62, Brief on Remand at 11, n.7.)

- 11 -

IT IS FURTHER ORDERED denying a certificate of appealability because Petitioner has not made a substantial showing of the denial of a constitutional right.

DATED this 13th day of November, 2012.

_____
Susan R. Bolton
United States District Judge